In the United States District Court
for the Western District of Virginia
Roanoke Division

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
OCT 29 2009
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

Jacob Alan Shouse,     Plaintiff,

v.     7:09-CV-00440

Tracy Ray, Warden,
Happy Earl Smith, MD.,
Vicky Phipps, DON,
Syed Zafar Ahsan, Psychiatrist,     Defendants,
Richard Saylor, Senior QMHP,
Karen Nelson, QMHP,
Keith Mullins, QMHP,
Diane Yates, Nurse, Registered,
Heather Bowens, Nurse, Licensed Practical

## Preliminary Statement

This is a civil rights action filed by Jacob A. Shouse, No. 1101441, a State Prisoner, for damages under 42 U.S.C. § 1983, alleging cruel and unusual punishment, medical negligence and deliberate indifference to a serious medical need in violation of the Eighth Amendment of the United States Constitution, et al, resulting in a serious injury to life, liberty all without due recovery.

Statute of limitations is tolled as a result of previous suit filed on these same claims, which was dismissed without prejudice to being refiled. Also, due to Defendants' intentional obstructing the filing of this suit by taking Plaintiff's legal property, prolonged stripped cell and denying Plaintiff access to needed legal assistance. See VA. Code § 8.01-229.

(1)

## Parties

1.) Comes now the Plaintiff who is Jacob Alan Shouse, no. 1101441, A State Prisoner currently confined within the Virginia Department of Corrections (VADOC) at Red Onion State Prison (ROSP), Post Office Box 970, Pound, VA. 24279, also during the events described in this complaint.

2.) Defendant Tracy Ray is the Warden of ROSP and has knowledge of all actions therein; he is the chief supervisor/superintendent, and he is balanced the same in acts as all his subordinates. He is sued in his individual capacity.

3.) Defendant Happy Earl Smith, M.D., is the chief Doctor at ROSP, he is primarily the doctor in charge of all medical responsibility at ROSP. He is sued in his individual capacity.

4.) Defendant Vicky Phipps is a Nurse and the Director of Nursing (DON), she is generally the supervisor of all nursing staff at ROSP. She is sued in her individual capacity.

5.) Defendant Syed Zafar Ahsan is the Psychiatrist at ROSP; he is sued in his individual capacity.

6.) Defendant Richard Saylor is the Senior Qualified Mental Health Professional (QMHP) at ROSP, he is generally responsible for ensuring the provisions of mental health care to all prisoners and the supervisor of his subordinate QMHPs. He is sued in his individual capacity.

7.) Defendants Karen Nelson and Keith Mullins are QMHPs employed at ROSP. They are sued in their individual capacities.

8.) Defendants Diana Yates and Heather Bowens are Nurses employed at ROSP. They are being sued in their individual capacities.

9.) All above mentioned defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

(2)

## Jurisdiction

10.) This court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. § 1343.

## Venue

11.) This court has venue under 28 U.S.C. § 1391.

## Facts

12.) On October 6, 2007, at ROSP, the Plaintiff attempted suicide due to a serious mental health condition on or about one AM, in A-400 pod cell A-401.

13.) Plaintiff lacerated his left arm hitting his brachial artery; he cut open his stomach; he swallowed the razor used to cut himself; he also swallowed three "shanks" (One six inch sharp piece of metal and two six inch pieces of plastic sharpened on both ends; Neither these were bendable, ice-pick like). Plaintiff then hung himself from the cell vent and went unconscious.

14.) Plaintiff was found unconscious by Lieutenant Drew Fleming and Officer D. Maloney who entered the Plaintiff's cell and cut the piece of sheet used as a rope he was hanging by, layed him on the bed.

15.) Nurse Roberts arrived and administered smelling salts to revive the plaintiff — successfully. She asked Plaintiff what he cut himself with and plaintiff responded that he used a razor, which he swallowed along with 3 shanks. Nurse Roberts tried to stop the blood from spraying — unsuccessfully.

16.) Plaintiff was taken to medical on a stretcher to await an ambulance to transport him to a local hospital — Dickingson County.

17.) Plaintiff arrived at the hospital and received sutures to his cuts; which were approximately three inches long and very deep, having arterial bleeding from his arm. X-rays were taken; but plaintiff wasn't told of the results. But foreign bodies were noted. Plaintiff was discharged.

18.) Plaintiff returned to ROSP on October 6, 2007 around five or six AM. and ordered to be placed in Medical Housing mental health cell No. two in Sgt....

(3)

(Continued from pg. 3, facts)

...18.) Restraints per QMHP Karen Nelson, in a "face up" position.

19.) In medical, mental health cell no. two, there is a camera... as per VADOC policies for observation of "At Risk" or self-injurious prisoners with extensive suicidal histories, requiring such constant observation.

20.) On October 6, 2007 around 10 AM, QMHPs... who are defendants Karen Nelson and Richard Saylor ordered the plaintiff to be removed from medical housing, removed from mental health cell no. two (with a camera), to A-400 pod cell A-401, and subsequently placed back in the 5pt. restraint position in a "face up" position. This was done by Lieutenant R. Rose and Sergeant E. Maggard, solely because defendant Nelson didn't want plaintiff around inmate C. Coates.

21.) Defendant Karen Nelson knows of the VADOC policies stating that prisoners who ingest foreign bodies, drugs, have severe colds, seizures, etc., are to be placed in a "face down" position to prevent serious risk of choking, etc.

22.) Inmate C. Coates no. 271498 (old no.) was in medical housing cell no. 7 and is acquainted with plaintiff. Defendants Nelson and Saylor wanted the plaintiff to be isolated from C. Coates so he couldn't talk with the plaintiff and cause the plaintiff more suffering.

23.) Defendant Nelson knows that the plaintiff just attempted suicide in A-400 pod cell A-401, and that it does not have a camera, and that he would be subjected to denial of VADOC policies requiring any prisoner to be temporarily released from 5pt. restraints for meal/bathroom breaks, etc., solely because of the pod officers business of daily routine and hatred towards the plaintiff for his earlier suicide attempt.

24.) Defendant Nelson failed to place the plaintiff on a constant watch or one to one observation due to the cell not having a camera as DOC policy requires for such serious "At-Risk" offenders. In lieu, the plaintiff was placed only on a 15 minute observation status, despite the policies.

(4)

(continued from pg 4, FACTS)

25.) Defendant Vicky Phipps, DON, took no action or intervened or left instructions to her nurses to do so in not allowing the plaintiff to leave the medical unit, despite the knowledge of serious risk to the plaintiff of a perforated bowel due to the presence of 3 sheep shanks in his G.I. Tract, a razor and further risk of loss of blood from the plaintiff's sutured wounds.

26.) Defendant Tracy Ray took no action in above mentioned concerns or intervened or gave orders to his subordinates to do so, despite his personal knowledge of the associated risks with the plaintiff's serious medical conditions.

27.) The plaintiff was in Spt. Restraints from October 6-8, 2007, consecutively having to urinate, defecate and vomit on himself, was denied meals/bathroom breaks and restoration of circulation to limbs, which defendant Ray is aware of, and furthermore, allows without intervention in the regular routine at ROSP.

28.) On October 8, 2007, the plaintiff was taken to a medical conference area by wheelchair, still restrained; to speak with defendant Nelson for her to evaluate the mental condition/risk to self of plaintiff in order to discontinue/continue the use of Spt. Restraints.

29.) Defendant Nelson said to the plaintiff that she did not trust him and she was going to keep him tied down. This was uttered in her presence and despite plaintiff's reassurances that he would not continue to harm himself if she let him up + his pleas to be let up because of his extremely bad pain and joint stiffness, muscleaches mostly associated with the ingestion of the razor and shanks... she refused.

30.) Defendant Nelson ordered the plaintiff to be taken back to A-400 pod cell A-401 and placed back in Spts., "face up", for 24 more hours. During which time plaintiff again was forced to urinate, defecate and vomit on self.

31.) On October 9, 2007 the plaintiff was seen at his cell by defendant Nelson who finally agreed to be reasonable and released the plaintiff from ...

⑤

...31.) Spt. Restraints, however, due to her "reluctance" of still being able to trust the plaintiff, she wanted him to still be in a type of restraints.

32.) Though plaintiff was released from Spts., he was subsequently placed in a torturous ambulatory restraint; i.e., hands cuffed, ~~wrists~~ ankles shackled together with a chain running taut between the two. Per Defendant Nelson.

33.) On October 10, 2007 while plaintiff was in Ambulatory Restraints he vomited up the razor he swallowed and cut himself with on October 6th, 2007. It was retrieved by Lieutenant Joe Scoiver and Sergeant Elizabeth Macy and after the plaintiff reported this to them.

34.) Later that day, October 10, 2007, Plaintiff was taken in ambulatories and wheelchair to medical by Lieutenant Fannin to speak with Mental Health. Defendants Nelson, Saylor, Keith Mullins and Syed Zafur Ahsan were all present. They showed anger towards the plaintiff.

35.) Among defendants Nelson, Saylor, Mullins, and Ahsan; it was decided that the plaintiff would be placed back in a "face up" Spt. Restraints position; due to those defendants "not trusting" the plaintiff since he "produced" a razor. This done despite the plaintiffs pleas to not be tied back down, that he was not a threat to himself and he was in pain.

36.) The Plaintiff was in Spt Restraints in A-400 pod cell A-401 from October 10-12, 2007; at which time he again was forced to urinate and defecate on himself.

37.) Against VADOC policies (stating that any prisoner in Spts. will be seen each working day to evaluate their mental condition/risks and to determine release/continue restraints use) defendant Karen Nelson refused to see the plaintiff on October 11, 2007. She came into the pod, signed the log-book, but didn't evaluate the plaintiff.

(6)

(Continued from Pg. 6, Facts)

38.) On October 12, 2007 the plaintiff really began feeling the effects of the ingested foreign notes and the prolonged torture of restraints and had an Officer (Gibson) to fill out an emergency grievance stating that he had been in restraints for seven days, in terrible pain, is not suicidal and will not hurt himself and that no QMHP saw him as required on October 11, 2007. It (grievance) was answered by defendant Saylor and sent back as not an emergency; signed and dated 10/12/07, 11:15 am.

39.) However, defendant was later released from SPS., but left on a stripped cell and 15 minute observation by QMHP Gracie Clark on October 12, 2007 around one pm.

40.) Plaintiff was in terrible pain and again submitted an emergency grievance stating the extent of his condition, e.g., vomiting, blood in stool and cannot eat, etc.. This was signed and dated 10/12/07, 1pm by defendant Dianne Yates and checked not an emergency.

41.) With the plaintiff's continuous imploring to see the doctor on October 12, 2007; he was finally allowed to be evaluated by Ms. Bellamy, MD., who sent the plaintiff to Mountain View Regional Medical Center (MVRMC) for x-rays. They were noted and plaintiff was returned to ROSP, A-400 pod cell A-401.

42.) With Vicky Phipps, defendant; with her factual knowledge of the serious risk this posed she refused to take action, leave orders or intervene in the plaintiff still not being admitted to medical, even though she knew that this represented negligence.

43.) On October 17, 2007 plaintiff submitted another emergency grievance, also checked not an emergency; though it stated that plaintiff was passing out due to severe pain, vomiting and the risk of a bowel perforation—"guaranteed—if not ensured. Signed and dated, 10/17/07, 5²⁷ pm, by defendant Heather Bowers.

(7)

(Continued from pg. 7, facts)

44.) On October 17, 2007 plaintiff was reluctantly allowed to see the doctor, Timothy McBride, who scheduled an emergency room visit/admittance for the next day October 18, 2007 at a hospital who would admit and remove the foreign bodies - Norton Community Hospital (NCH). This was done because Dr. McBride agreed with plaintiff that his condition represented a life-threatening situation if not attended to as soon as possible, also because he (as well as all defendants) knew of plaintiff's history and the fact that just in April 2007, plaintiff had ingested the same objects resulting in the perforation of small bowel, resection of small gangrenous portion of small bowel to the plaintiff during surgery at NC Hospital; all without anesthesia.

45.) On October 18, 2007 defendant Happy Earl Smith, MD, canceled the appointment by Dr. T. McBride; knowing respectively well of the dangerous life-threatening risk this posed.

46.) On October 18, 2007 at 11:50 AM, plaintiff submitted an emergency grievance again about his painful life-threatening conditions and the effects thereof, yet it was checked not an emergency. Signed and dated, 10/18/07 1:24 PM, by defendants Smith and Yates. Also, at 3:15 PM plaintiff submitted a subsequent one about the same issue and literally begged for help, yet checked not an emergency with a blatant lie by defendant Yates that defendant refused assessment by a (RN) Registered Nurse Regina Kilgore. Signed and dated, 10/18/07, 4:47 PM, by defendant Yates.

47.) On October 22, 2007 plaintiff submitted an emergency grievance, also on October 23, 2007 and October 24, 2007; all begging for help, asking to be placed in medical for better adequate observation to help prevent bowel perforation and explaining the extent of his pain and its effects, e.g., passing out, nausea, dizziness, vomiting, inability to eat, sleep and the fact that if he stayed in A-400 pod there wasn't adequate observation and a bowel perforation could go unnoticed rather...

⑧

(Continued from pg. 8, facts)

...47.) them possibly being prevented; all to no avail. All three were checked not an emergency, signed and dated, 10/22/07 @ 10:32 AM / 10/23/07 @ 8:20 AM / and 10/24/07 @ 12:57 PM, by defendant Yates.

48.) On or about October 29, 2007 the plaintiff was assessed by medical staff and he had a temperature above 100°F and blood pressure above the limit specified as high, i.e., 140/90. Coincidentally, the plaintiff had a prescheduled CAT scan for this day also. He was transported to MCRMC.

49.) During the CAT scan the plaintiff collapsed unconscious, 10/29/07, approx...

50.) The plaintiff was told at MCRMC that he will require emergency surgery for a perforated/disfigured bowel. Perforations due to foreign body ingestion; prolonged persistence and inflammation due to perforations and the prolonged existence of foreign bodies. Also requiring a resection of portion of the plaintiff's small bowel. Said and operated on by Dr. Tionydong Bunchuin.

51.) Plaintiff was told by the radiologist and Dr. Bunchuin that had the CAT scan not been prescheduled and he not gotten it done when he did that he most probably would have died for it being too late and that said by the poisoning of his bloodstream and the onset of peritonitis. A slow, painful death.

52.) The definition atop the emergency grievance form defines an emergency as: "Emergencies are defined as situations or conditions which "may" subject the offender to immediate risk of serious personal injury or irreparable harm." Per VADOC policy. Yet, all plaintiff's were checked "not" an emergency.

53.) The plaintiff suffered a serious personal injury and irreparable harm in the above mentioned paragraphs no. 50-51. He also sustained weeks of physical/mental abuse, torture, severe pain and years of it hereafter.

54.) The defendants Ray, Smith and Phipps allowed this entire negligent, cruel + unusual and deliberately indifferent and painful act to forego without interference, action or order to prevent, this is the routine practice...

(9)

(continued from pg. 9, Facts)

... 54.) at Red Onion State Prison; ran and supervised by defendant Ray, who could have stepped in and ordered or showed forth effort to intervene and make available in his earnest attempt the adequate medical/mental health care/ treatment needed to prevent the atrocity the plaintiff sustained with injury.

55.) The plaintiff was subjected to the most ridiculously malicious and sadistic act of being tied to a bed in 5pt. restraints or restricted cruelly confined in other type of torturous restraint for "Seven" consecutive days.

56.) Defendant Phipps and Smith could have prevented the atrocity the plaintiff sustained along with irreparable harm by not cancelling scheduled appointments, admitting plaintiff to medical housing, etc.; but this is their routine practice at ROSP, especially towards prisoners with mental health illnesses.

57.) Plaintiff has mental diagnosis according to DSM IV as: Bi-Polar disorder, Cyclothymic disorder — both with psychotic features ... Axis I; Major depression childhood onset type, Antisocial/Borderline personality disorder ... Axis II.

58.) Plaintiff has exhausted all administrative remedies available and set forth by prison officials ... to the extent made available to him.

## Claims for Relief

59.) The actions of defendant Ray to intervene or take disciplinary or other action to curb the known pattern of misuse of force, denial of medical/ mental health treatment constitutes deliberate indifference and contributed and proximately cause the above described violations of eighth amendment rights.

60.) The actions of defendants Nilson, Mullins, Saylor and Alison in using excessive force against the plaintiff or in failing to intervene was done maliciously and sadistically with the wanton and unnecessary intentional infliction of pain and constituted cruel and unusual punishment in violations of the Eighth amendment of the United States Constitution.

(10)

(continued from pg. 10, Claims for Relief)

61.) The actions of defendants Smith, Phipps, Bowens and Yates for failure to provide the plaintiff with adequate medical care, housing; denial of medical care, observation and interference with scheduled appointments; constitute deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth amendment of the United States Constitution.

62.) The actions of all defendants contributed & primarily caused or added to the serious irreparable injuries the plaintiff suffered and still suffers hereafter, i.e., loss of a portion of his small bowel, mental distress/anguish, deterioration of equilibrium and humiliation.

The Plaintiff therefore demands a jury trial on all of the issues the court sees triable.

## Relief Requested

WHEREFORE, the plaintiff request that the court grant the following Relief:

A.) Reward Compensatory, Nominal and punitive damages in excess of $25.00, jointly and severally against all defendants in such sum as a jury would deem appropriate.

B.) Any further relief the court may find appropriate and just in respects to this case.

C.) That the Plaintiff be permitted to proceed In Forma Pauperis pursuant to 28 U.S.C. § 1915. See affidavit herewith.

I swear under penalty of perjury that the foregoing to be true.

Jacob Shouse, No. 1101441
Red Onion State Prison
P.O. Box 1900
Pound, VA. 24279

Respectfully Submitted,

[signature]

NOTARY OVER →

Subscribed and sworn to before me this 22 day of October 2009

_____ 7152702
Notary Public

My Commission Expires: 09/30/2011

Place Notary Seal Here [NOTARY SEAL: JAMES LYALL, NOTARY PUBLIC, REG. #7152702, MY COMMISSION EXPIRES 9/30/2011, COMMONWEALTH OF VIRGINIA]

"I certify that the above notary is not a party to this action."

_____
Inmate Signature

Jacob Shouse # 1101441
Red Onion State Prison
P.O. Box 1900
Pound, VA. 24279

2400081234

United States District Court
Western Dist. of Virginia
  10 Box 1234
Roanoke, VA. 24011

Virginia Dept Of Correction
Has Neither Censored Or Inspected
Item. Therefore, The Dept Does Not
Assume Any Responsibility
For It's Contents

RECEIVED
OCT 29 2009
USDC Clerk's Office
Mail Room

02 1M
0004228658
MAILED FROM ZIPCODE 24279
UNITED STATES POSTAGE
$00.61°
PITNEY BOWES
OCT 28 2009

Legal Mail