CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RJKo

AUG 26 2010

JULIA C. DUDLEY, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JACOB ALLAN SHOUSE,<br>Plaintiff, | Civil Action No. 7:09-cv-00440 |
| v. | **MEMORANDUM OPINION** |
| TRACY RAY, et al.,<br>Defendants. | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Jacob Allan Shouse, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants Tracy Ray ("correctional defendant"), warden of the Red Onion State Prison ("Red Onion"); Dr. Happy Smith, Nurse Vicky Phipps; Nurse Heather Bowens, Psychiatrist Syed Zafar Ahson; Qualified Mental Health Professional ("QMHP") Richard Saylor; QMHP Karen Nelson; and QMHP Keith Mullins (the "medical defendants" collectively). Plaintiff alleges that the defendants were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment. This matter is presently before me upon the correctional defendant's motion for summary judgment, to which plaintiff responded.[1] After reviewing the motion and plaintiff's response, I refer the matter of exhaustion of administrative remedies to the magistrate judge to make factual findings and recommend a disposition of this issue.

I.

Plaintiff alleges that on October 6, 2007, he lacerated his arm, cut open his stomach, swallowed a razorblade and three shanks, and then hanged himself from his cell vent. Red Onion staff found plaintiff and facilitated his transportation to a hospital for treatment. Plaintiff

---

[1] The medical defendants also filed a motion for summary judgment. Finding that the correctional defendant's motion for summary judgment maybe dispositive of the entire action, consideration of the medical defendants' motion is not presently necessary.

received stitches to close the wound on his abdomen and arm. Upon returning to Red Onion, he was placed in a medical cell in five-point restraints and under suicide watch to allow his stitches to heal and to be observed. Plaintiff was released from those restraints several days later for a brief period before being ordered back into the restraints. The next day, staff removed plaintiff from five-point restraints and placed him in ambulatory restraints. The next day, staff placed plaintiff back in five-point restraints. Plaintiff alleges that this cell did not have a camera and he was not placed on one-to-one checks. Plaintiff also alleges that he later developed abdominal pain and vomited a razor. Plaintiff received emergency room treatment on October 12, 2007, when x-rays were taken and he was again released back to Red Onion. Plaintiff alleges that the defendants failed to intervene on his behalf to ensure that he received proper medical and mental health treatment following his self-inflicted injuries.

## II.

### A.

As a preliminary matter, plaintiff filed a motion for copies. In this motion, plaintiff requests a court order compelling the defendants to provide him free copies of documents he wants to file in this case. Plaintiff alleges that the defendants' correctional policies prevent him from receiving free copies because he already owes officials more than $50 in unpaid photocopy bills. Plaintiff claims he needs free copies to serve the defendants with copies of his filings, pursuant to Rule 5, Fed. R. Civ. P., to keep spare copies for his own records, and for any prospective discovery.

Plaintiff is proceeding in forma pauperis, pursuant to 28 U.S.C. § 1915, but that status does not confer upon him a right to receive copies of documents at government expense. See,

2

e.g., In re Richard, 914 F.2d 1526, 1527 (6th Cir. 1990) (stating § 1915 waives only prepayment of fees and costs and security). To the extent the request can be construed as seeking preliminary injunctive relief, plaintiff fails to establish such an entitlement. A movant must establish four elements before a preliminary injunction may issue: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008).

Plaintiff does not address how he is likely to succeed on the merits, and he is unlikely to suffer irreparable harm without the injunction. When the court receives plaintiff's filings, notice of the filing is served on the defendants via the court's electronic filing system. See Fed. R. Civ. P. 5(b)(2)(E). Plaintiff can produce his own copies by his own hand without incurring any copy costs, and discovery is premature until I resolve the defendants' qualified immunity defense. The balance of equities favors the defendants who benefit from the qualified immunity defense, which prevents them from suffering under plaintiff's requests for copying services. See Mitchell v. Forsythe, 472 U.S. 511, 526 (1986) (stating qualified immunity questions should be resolved before discovery). Finally, the public's interest is served by limiting taxpayers' subsidies of plaintiff's presently unnecessary litigation costs. Accordingly, I deny plaintiff's requests for copies.

B.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and,

---

[2] The parties received reasonable and explicit notice that I may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Defendants argue that plaintiff failed to exhaust his administrative remedies about the treatment following the events of October 6, 2007. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life[,]" Porter v. Nussle, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). Letters or communications filed outside the grievance procedures do not constitute exhaustion. See Sloan v. United States, No. 3:01cv347, 2002 WL 32502088 at *3 (E.D. Va. July 10, 2002), aff'd 63 F. App'x 174 (4th Cir. 2003). An inmate's failure to exhaust is an affirmative defense and the burden is on the defendant to prove the failure

5

to exhaust. Jones v. Bock, 549 U.S. 199, 216 (2007).

To exhaust a claim about conditions inside a Virginia Department of Corrections ("VDOC") facility, a prisoner must properly raise his grievance through all levels of the VDOC's Offender Grievance Procedure. See VDOC Operating Procedure 866.1 (Corr. Def.'s Br. Supp. Mot. Summ. J. Ex. 1, Attch. 1.) Prior to submitting a grievance, the inmate must demonstrate that he has made a good faith effort to informally resolve his complaint. (Id. 5-6.) This act may be accomplished by submitting an informal complaint form to the grievance office who will forward the complaint to the appropriate department head. If unsuccessful, a regular grievance must be filed within thirty calendar days from the date of the occurrence or incident. (Id. 7.) If the inmate meets the criteria for acceptance,[3] the grievance is logged and staff issue a receipt to the inmate.

If the regular grievance does not meet the criteria for acceptance, the grievance coordinator returns it to the inmate within two working days and explains why the grievance was not accepted. (Id.) The inmate may resubmit the grievance after complying with the criteria for acceptance. If the inmate wants a review of the intake decision for any grievance, he may send the grievance to the appropriate Regional Ombudsman for an appeal. (Id. 8-9.)

The Warden or Superintendent of the prison where the grievance is filed, or his or her designee, reviews accepted regular grievances at the institutional level, which is called Level I review. If the inmate is dissatisfied with the Level I determination, he may appeal the determination to Level II. On appeal, also known as Level II review, the Regional Director, Health Services Director, or Chief of Operations for Classification and Records reviews the

---

[3]For example, the grievance may only address one issue at a time. See, e.g., id. at 6.

Level I decision depending on the type of complaint. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Deputy Director or Director of the VDOC conducts the final review of the regular grievance. The time limit for issuing the Level I response is 30 calendar days, 20 calendar days for the Level II response, and 20 calendar days for the Level III response. (Id. 9-10.) Notably, expiration of the time limit at any stage of the process automatically qualifies the grievance for appeal to the next level of review. Notification of one's appeal rights is indicated in the response form at each level of the decision making process. Records of all regular and emergency grievances are archived for review at the facility where the inmate files it. (Id. 11-12.) Inmates must use the official grievance forms. (Id. 2, 6.)

The correctional defendant submitted an affidavit of the Red Onion Grievance Coordinator, who is the custodian of the inmate-grievance files maintained at Red Onion. After reviewing the records maintained in the regular and ordinary course of business, she avers based on her personal knowledge that she "found nothing in [plaintiff's] file to indicate that he filed any grievances regarding the treatment he received following this incident." (Corr. Def.'s Br. Supp. Mot. Summ. J., Ex. 1 at 3.)

In response to this averment, plaintiff filed his own affidavit in which he states that he attempted to exhaust his administrative remedies. Plaintiff attached in support a letter to the Regional Director of Ombudsman Services dated November 14, 2007, by which he allegedly demanded a response to his grievance within thirty days. (Pl.'s Resp. To Corr. Def.'s Mot. Summ. J. (no. 48) 7.) In response to the court's conditional filing order, plaintiff also filed a verified statement, asserting he exhausted his administrative remedies "to the extent made available to [him] by officials." (Pl.'s Verified Statement (no. 5) 2.)

A review of the court's records further reveals that plaintiff previously filed a similar § 1983 action in May 2008 alleging similar claims involving the same circumstances as the instant action. See, e.g., Shouse v. Ray, No. 7:08-cv-00347 (W.D. Va.). Plaintiff filed a verified statement with the earlier complaint, averring that he "attempted to exhaust administrative remedies but [his] grievance was rejected as untimely[,] [and] [he] . . . appealed that determination to the highest level available." Id. (no. 3.) Plaintiff attached a copy of his informal grievance, complaining about the medical care at issue and the untimeliness of his grievance. A correctional captain denied the grievance, and plaintiff filed a regular grievance. Plaintiff complained again about the untimeliness of the grievance and about the medical treatment. The institutional ombudsman denied the claim.[4]

Thus, the records in plaintiff's cases contradict each other. Plaintiff avers that he exhausted his remedies to the extent they were available to him because prison officials refused to respond to his grievances. However, plaintiff also avers that he filed grievances that were rejected as untimely. Furthermore, the affiant for the correctional defendant claims that no record of plaintiff's grievances about the incident exists, despite the court's record in the prior case that contains seemingly authentic, related grievances signed by VDOC officials.

Prison officials bear the burden on exhaustion for summary judgment motions, and they must establish that the evidence is so one-sided that no reasonable factfinder would determine that a plaintiff was prevented from exhausting his administrative remedies. See Anderson, 477

---

[4]Based on these attachments and the verified statement, I dismissed that earlier action in June 2008 because it appeared from the face of his complaint that plaintiff had not exhausted his administrative remedies. I relied on the fact that plaintiff did not include any Level II or Level III grievance document. I dismissed the action sua sponte without prejudice and without conditionally filing it in order to allow plaintiff to refile the action after exhausting all administrative remedies or stating why he did not exhaust. Plaintiff refiled the claims in the instant action, now alleging that VDOC officials caused administrative remedies to be unavailable.

U.S. 251-52. Despite the assertion that plaintiff did not exhaust administrative remedies because he did not file any grievance, the previous record contains signed grievances related to the instant claims. Furthermore, I can not yet find that plaintiff filed untimely grievances because plaintiff claims officials obstructed his access to grievances and it is unknown whether VDOC officials timely received grievances. Notably, plaintiff avers that prison officials prevented him from accessing administrative remedies. See Hill v. O'Brien, No. 09-6823, 2010 U.S. App. LEXIS 14212, at *9-10 (4th Cir. Jul. 12, 2010) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."). Therefore, a genuine issue of material fact exists whether plaintiff timely filed the necessary grievances, was obstructed from exhausting administrative remedies, or a combination thereof. Accordingly, I refer the matter of administrative exhaustion to the magistrate judge to conduct hearings as he deems necessary, including evidentiary hearings, and to submit proposed findings of fact and recommendations for the issue of administrative exhaustion.

III.

For the foregoing reasons, I deny plaintiff's motion for copies and refer the matter of exhaustion of administrative remedies to the magistrate judge to conduct hearings as he deems necessary, including evidentiary hearings, and to submit proposed findings of fact and a recommendation for the disposition of the issue.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff, counsel of record for the defendants, and Magistrate Judge Michael F. Urbanski.

**ENTER**: This 26th day of August, 2010.

Senior United States District Judge