CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 1 0 2010

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JACOB ALLAN SHOUSE, | ) | Civil Action No. 7:09-cv-00440 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRACY RAY, et al., | ) | By: Hon. Michael F. Urbanski |
|     Defendants. | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Jacob Allan Shouse, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. In his complaint, plaintiff alleges that the defendants, individuals at the Virginia Department of Corrections' ("VDOC") Red Onion State Prison ("ROSP"), violated his constitutional rights by not providing adequate medical services after his suicide attempt in October 2007. Plaintiff names as defendants the warden of the ROSP ("correctional defendant") and several physical and mental health providers ("medical defendants"). The correctional defendant and medical defendants filed their respective motions for summary judgment,[1] and plaintiff responded.

By a memorandum opinion and order dated August 26, 2010, the Honorable Jackson L. Kiser, Senior United States District Judge, referred the issue of exhaustion of administrative remedies to the undersigned to make determinations of fact and conclusions of law about whether plaintiff fully exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), concerning the medical treatment he received after his October 2007 suicide attempt. The undersigned conducted an evidentiary hearing on October

---

[1] The correctional defendant raised the affirmative defense of failure to exhaust administrative remedies, and the medical defendants argued the merits of the complaint.

25, 2010. For the reasons set forth below, the undersigned finds that plaintiff did not properly exhaust his administrative remedies and recommends that the correctional defendant's motion for summary judgment be granted.

I.

Plaintiff alleges that on October 6, 2007, he lacerated his arm, cut open his stomach, swallowed a razorblade and three shanks, and then hanged himself from his cell vent (hereinafter "the incident"). Plaintiff alleges in his complaint that his subsequent medical care, or lack thereof, constituted deliberate indifference to a serious medical need, in violation of the Eighth Amendment to the United States Constitution.

Plaintiff stated in a prior, related civil action that he filed grievances that prison officials rejected as untimely filed. However, plaintiff states in his instant filings that he exhausted his remedies because prison officials never responded to his grievances. The correctional defendant claims that plaintiff never filed any grievances, but court records revealed that plaintiff filed grievances with prison officials' signatures on them. The district judge referred this matter to the undersigned because the record was not clear as to the extent of plaintiff's attempts to exhaust his administrative remedies.

At the evidentiary hearing, plaintiff testified that VDOC staff treated him after the incident by, inter alia, placing him in restrictive housing that prevented him from having personal property, including a pen or paper. Plaintiff also testified that he was often placed in five-point or ambulatory restraints. During his time in five-point restraints, plaintiff was able to file multiple emergency grievances about his allegedly inadequate medical care by having ROSP security staff fill out the forms for him, but he said he could not file informal complaints or

regular grievances. After being let out of five-point restraints, plaintiff obtained a pen and paper in violation of his housing restrictions, and he said that he filed a handwritten informal grievance. Plaintiff also testified that he did not receive a response to that grievance within fifteen days and that he then filed a handwritten regular grievance about his medical care. Plaintiff says he did not personally receive a filing receipt because of his housing restrictions.

After not receiving a response from VDOC officials, plaintiff testified that he wrote a letter to the VDOC grievance regional ombudsman around November 14, 2007.[2] In this letter, plaintiff merely described the times he was in various restraints and simply alleged that he "was denied medical care and inflicted with cruel and unusual punishment and deliberate indifference" because the "warden, doctors, nurses, and [qualified mental health providers] violated [his] rights [and] several VDOC policies." (Pl.'s Resp. to Corr. Def. Mot. Summ. J. (no. 48), Encl. A. ¶¶ 2, 4.) Plaintiff warned the ombudsman that he would proceed with a civil action if he did not receive a response to his allegations by December 14, 2007. (Id.)

Plaintiff testified that by December 1, 2007, he was no longer kept in restrictive housing, prevented from having property, or was unduly physically restrained. Plaintiff also testified that he is intimately familiar with the grievance procedures because he very frequently files grievances and asserted that he could quote sections of the policy.

By the end of April 2008, plaintiff still had not heard back from the regional ombudsman about his November 2007 letter. Plaintiff filed a new informal grievance and a new regular grievance about his medical care with ROSP officials, who denied his grievances. Plaintiff then

---

[2]Plaintiff filed a copy of this letter in his response to the correctional defendant's motion for summary judgment.

filed the first § 1983 action about incident and related medical care, which the court dismissed without prejudice. See Shouse v. Ray, et al., No. 7:08-cv-00347, slip op. at 2-3 (W.D. Va. June 30, 2008). The court dismissed the action without prejudice because plaintiff's grievance forms indicated that he did not appeal the denial of his regular grievance.

The correctional-defendant's witness at the evidentiary hearing, the ROSP grievance coordinator, testified that she has been in that position for the past seven years. She acknowledged that she checked plaintiff's grievance records for only the three-month period of October to December 2007 to prepare her June 2010 affidavit to the court. Based on this incomplete examination of plaintiff's grievance records, the grievance coordinator averred in June 2010 that she did not find any grievance from plaintiff about the incident and related medical care.

After she prepared the affidavit and later learned that plaintiff filed other grievances, she rechecked plaintiff's entire grievance file and found plaintiff's relevant informal complaint and regular grievance from May 2008. Notably, she testified that she did not find any other informal or regular grievance about the incident and medical care after checking the complete file. However, she did find several emergency grievances about the incident and medical care that either plaintiff filed or ROSP security staff filed at his request.

The grievance coordinator also explained that the exhaustion of administrative remedies in VDOC facilities is governed by Operating Procedure 866.1. To exhaust a claim about conditions inside a VDOC facility, an inmate must properly raise his grievance through all levels of the VDOC's Offender Grievance Procedure. See VDOC Operating Procedure 866.1 (H'rg Ex. 1; Corr. Def.'s Br. Supp. Mot. Summ. J. Ex. 1, Attch. 1.) Prior to submitting a regular grievance,

the inmate must demonstrate that he has made a good faith effort to informally resolve his complaint. (Id. 5-6.) This act may be accomplished by submitting an informal complaint form to the grievance office, which will forward the complaint to the appropriate department head. If unsuccessful, a regular grievance must be filed within thirty calendar days from the date of the occurrence or incident. (Id. 7.) If the inmate meets the criteria for acceptance,[3] the grievance is logged and staff issue a receipt to the inmate. The grievance coordinator noted that plaintiff's grievance records from his time at the ROSP are kept at her office, pursuant to DOP 866.1, when he files a grievance in accordance with that policy.

If the regular grievance does not meet the criteria for acceptance, the grievance coordinator returns it to the inmate within two working days and explains why the grievance was not accepted. (Id.) A copy of the unaccepted grievance is kept in the inmate's grievance folder for documentation. (Id.) The inmate may resubmit the grievance after complying with the criteria for acceptance. If the inmate wants a review of the intake decision, he may send the grievance to the appropriate Regional Ombudsman for an appeal. (Id. 8-9.)

The Warden or Superintendent of the prison where the grievance is filed, or his or her designee, reviews accepted regular grievances at the institutional level, which is called Level I review. If the inmate is dissatisfied with the Level I determination, he may appeal the determination to Level II. On appeal, also known as Level II review, the Regional Director, Health Services Director, or Chief of Operations for Classification and Records reviews the Level I decision depending on the type of complaint. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Deputy Director or the Director of the

---

[3] For example, the grievance may only address one issue at a time. See, e.g., id. at 6.

VDOC conducts the final review of the regular grievance. The time limit for issuing the Level I response is thirty calendar days, twenty calendar days for the Level II response, and twenty calendar days for the Level III response. (Id. 9-10.) Expiration of the time limit at any stage of the process automatically qualifies the inmate to appeal the grievance to the next level of review. Notification of one's appeal rights is indicated in the response form at each level of the decision making process. Records of all regular and emergency grievances are archived for review at the facility where the inmate files it. (Id. 11-12.) Notably, inmates must use the official grievance forms to comply with 866.1. (Id. 2, 6, 7.)

II.

A.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Commc'ns Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court does not need to treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (stating a court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions case in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). However, a prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings to withstand a motion for summary judgment supported by affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

### B.

The PLRA requires a prisoner to exhaust all available administrative remedies before bringing a claim under 42 U.S.C. § 1983, even where the relief sought cannot be granted by the administrative process. 42 U.S.C. § 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 85 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that the PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies). Pursuant to the PLRA, prisoners must not just initiate timely

7

grievances, but must also timely appeal through all levels of available administrative review any denial of relief. Woodford, 548 U.S. at 93 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions). To properly exhaust a claim, an inmate must file grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief. See Smith v. Rodriguez, No. 7:06-cv-00521, 2007 U.S. Dist. LEXIS 43571, 2007 WL 1768705 (W.D. Va. June 15, 2007) (citing McGee v. Fed. Bureau of Prisons, 118 F. App'x 471, 476 (10th Cir. 2004)). Failure to exhaust is an affirmative defense that defendant has the burden of pleading and proving. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).

Based on the evidence and the credibility of the witnesses, the undersigned finds that no reasonable trier of fact could find that plaintiff exhausted the available administrative remedies, as required by the PLRA. The experienced grievance coordinator reviewed plaintiff's entire grievance file and found the previously unaccounted grievances from May 2008 but did not find any other grievance, created by hand or by form, related to the incident. These records would be in plaintiff's grievance file, which is kept at her office, if plaintiff filed his grievances in compliance with DOP 866.1. Plaintiff's unsupported claim that he drafted his own grievance forms and filed them with grievance officials is not credible. If plaintiff filed these documents, the policy provides that copies of the documents, which would be returned for noncompliance, would be found in plaintiff's grievance file. Regardless, plaintiff's alleged handwritten grievances did not comply with DOP 866.1, which requires that a prisoner file grievances on the VDOC grievance forms; thus, they were not a step toward proper exhaustion, even if they had

existed.

Plaintiff admitted that prison officials released him from restrictive housing and physical restraints by December 1, 2007. Relying on this time as when plaintiff was no longer prevented from using the grievance system, plaintiff had up to thirty days from that date to file a regular grievance after filing an informal complaint. However, plaintiff acknowledged that he did not submit an informal complaint until April 2008,[4] more than four months after prison officials removed any restriction on his ability to file grievances. Furthermore, plaintiff failed to appeal the Level I determination of his May regular grievance to Level II. Moreover, none of plaintiff's emergency grievances count toward exhaustion under DOP 866.1. Accordingly, plaintiff's failures to timely file and completely appeal a grievance in accordance with DOP 866.1 mean he failed to exhaust administrative remedies under the PLRA.

III.

Based on the testimony by the parties at the evidentiary hearing and the evidence filed by both plaintiff and defendants, the undersigned finds that the correctional defendant has met his burden of proving that plaintiff did not strictly comply with DOP 866.1. Although plaintiff alleges that he filed a number of documents in an attempt to grieve his claim, he did not file any in a manner consistent with DOP 866.1, of which he admittedly was very familiar. Accordingly, the undersigned recommends that the correctional defendant's motion for summary judgment be GRANTED and the medical defendants' motion for summary judgment be DENIED as moot.[5]

---

[4]Plaintiff filed his informal complaint on April 29, 2008, and ROSP staff responded in May 2008. Plaintiff's regular grievance and staff's response were both filed in May 2008.

[5]Dismissal of the complaint for failing to exhaust administrative remedies precludes the court from considering the merits of plaintiff's claims. Therefore, consideration of the medical defendants' motion for summary judgment is unnecessary.

To hold otherwise would be contrary to the notion of strict compliance as well as the policy considerations behind § 1997e(a), especially that of judicial efficiency. See Porter, 534 U.S. at 524-25; Sallee v. Joyner, 40 F. Supp. 2d 766, 771-72 (E.D. Va. 1999); Johnson v. Garraghty, 57 F. Supp. 2d 321, 327 (E.D. Va. 1999).

The Clerk is directed to immediately transmit the record in this case to the Honorable Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send copies of this order to the plaintiff and counsel of record for the defendants.

**ENTER**: This __10th__ day of November, 2010.

_/s/_
United States Magistrate Judge